# 2003 DTA 116

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL I DE SAN JUAN
## PANEL II

LUCAS HERNANDEZ
Demandante-Recurrido

v.

VICTOR M. SANTINI, HADASSA COLBERG RAMIREZ
Demandada-Peticionaria la Ultima

v.

IRIS FIGUEROA
Interventora-Recurrida

Núm. KLCE-03-00280

San Juan, Puerto Rico, a 14 de julio de 2003

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz,
y las Juezas Peñagarícano Soler y Bajandas Vélez

Bajandas Vélez, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La peticionaria, Sra. Hadassa Colberg Ramírez (Sra. Colberg), nos solicita la revocación de la resolución emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, (TPI) el 5 de febrero de 2003 y notificada el 6 de febrero de 2003. En dicha resolución, el TPI determinó adoptar como un hecho probado el alegado incumplimiento del contrato de construcción suscrito por el Sr. Víctor Santini (Santini), demandado y ex-esposo de la peticionaria Sra. Colberg, y los hermanos Juan Bautista Figueroa e Iris Figueroa, esta última interventora en el pleito del epígrafe. Analizado cuidadosamente el expediente en su totalidad y el derecho aplicable, y habiéndose expedido el auto mediante resolución de 10 de marzo de 2003, ██ determinamos revocar la resolución objeto de este recurso.

### I

El 10 de febrero de 1994, Lucas Hernández (Hernández) instó una demanda en ejecución de hipoteca contra Santini, Colberg y la Sociedad Legal de Gananciales compuesta por ellos. Hernández solicitó la ejecución de una segunda hipoteca sobre una propiedad localizada en la Calle Fordham 905, Urbanización University Gardens, Río Piedras, Puerto Rico. En su demanda, alegó que la referida hipoteca se constituyó para garantizar el pago de dos pagarés al portador por la suma de $15,000.00 y $40,000.00 respectivamente. Indicó que el título de dicha propiedad constaba inscrito al folio 73, Tomo 1075, finca 18,954 del Registro de la Propiedad, Sección II, a nombre de los entonces esposos Santini y Colberg. Además, expuso que ambos pagarés fueron otorgados el 24 de febrero de 1978 ante la notario Nydia M. Landrón Bou. Finalmente, la demanda sostuvo que los deudores hipotecarios habían sido requeridos para el pago de ambos pagarés, pero se negaron a honrarlos. Apéndice de la Peticionaria, págs. 45-46.

El 8 de abril de 1994, Colberg presentó su contestación a la demanda. Apéndice de la Peticionaria, págs. 47-52. Esbozó como defensas afirmativas, entre otras, que ambos pagarés fueron entregados en prenda para garantizar un contrato de obra, y que hasta la fecha no se había presentado procedimiento de ejecución de prenda, siendo improcedente la ejecución de hipoteca instada por Hernández. La codemandada, además, afirmó que el contrato de préstamo era nulo, así como los pagarés. Por último, adujo que los pagarés garantizaban un

contrato de obra ya satisfecho, por lo que procedía su devolución.

Dicho contrato de obra, apuntó Colberg, se suscribió el 15 de septiembre de 1983 entre García Construction Corporation, cuyo presidente es el codemandado Santini, y Juan Bautista Figueroa, hermano de la interventora de epígrafe, Iris García Figueroa. Dicho contrato se suscribió con el objetivo de construir un edificio comercial en la Calle Robles #235 en Río Piedras.

Se adujo que en la misma fecha del referido contrato de obra, las partes suscribieron un contrato de "*Garantía Continua*" en el que Santini entregaba el pagaré de $15,000.00 y el dueño de la obra, Juan Bautista Figueroa, retendría el mismo en depósito hasta "*la feliz terminación del proyecto*". Véase documento de "*Garantía Continua*", Apéndice de la Peticionaria, pág. 48.

De igual forma, la Contestación a la demanda de la Sra. Colberg señaló que el 30 de marzo de 1984, Víctor Santini suscribió un Contrato Privado con Iris Figueroa en el que Santini obtuvo un préstamo de $20,000.00. Señaló que a cambio de dicho préstamo, Santini le entregó a Iris Figueroa el otro pagaré de $40,000.00. De este modo, Colberg específicamente negó su responsabilidad en relación con los pagarés. Alegó que ni consintió, endosó o se benefició de los pagarés o la negociación de los mismos, ya que se encontraba para aquella época separada, y posteriormente divorciada, del codemandado Santini. ■

Colberg además sostuvo que la obra de construcción que provocó la dación en prenda de los pagarés fue terminada a satisfacción de los dueños. En ese momento, el codemandado Santini alegadamente requirió a los hermanos Figueroa la devolución de los pagarés, y éstos se negaron.

Colberg presentó junto con su contestación, una demanda de co-parte contra su ex esposo Santini, reclamando que las acciones resultantes de las transferencias de los pagarés efectuadas por su ex esposo le causaron daños y angustias mentales, montantes a los $100,000.00. Del mismo modo, instó reconvención contra Lucas Hernández, quien advino tenedor de dichos pagarés como garantía del pago de un préstamo concedido a Iris Figueroa el 9 de diciembre de 1993 por la cantidad de $43,200.00. Dicho préstamo quedó plasmado en un documento intitulado "*Pagaré con Garantía de Prenda*" otorgado el 9 de diciembre de 1993 ante el notario Marcelino Ruiz Corujo. En el mismo, Hernández quedó autorizado a ejercer las acciones necesarias para hacer efectivo su préstamo, incluyendo el cobro de los dos pagarés dados en prenda mediante la vía judicial. ■ Colberg, en su reconvención, señaló que Hernández no era un legítimo tenedor de buena fe y que el contrato arriba descrito entre Hernández y Figueroa era uno simulado, por lo que suplicó la devolución de los pagarés y daños ascendientes a $100,000.00. Posteriormente, Colberg presentó demanda de tercero contra Prats Hotel Corp. h/n/c Sands Hotel y Casino, los hermanos Figueroa y otros. Sin embargo, dichas reclamaciones eventualmente fueron desestimadas. ■

Luego de varios incidentes procesales, el 15 diciembre de 1998, se celebró la Conferencia con Antelación al Juicio, delimitándose las controversias a ser dilucidadas. Entre ellas se encontraba la relativa a si hubo o no cumplimiento con la obra de construcción.Véase Minuta de la Conferencia con Antelación a Juicio, Apéndice de la Peticionaria, págs. 281-282.

El 21 de junio de 1999, Iris Figueroa presentó solicitud de intervención en el pleito. Alegó que debido al incumplimiento de Santini con el contrato de construcción y el pago de los $20,000.00 dólares otorgados en préstamo, Figueroa retuvo ambos pagarés legalmente, el de $15,000.00 en virtud del contrato de construcción, y el de $40,000.00 en virtud del contrato de préstamo del 30 de marzo de 1984. En vista de ello, Figueroa solicitó la ejecución de la hipoteca. En su solicitud incluyó una declaración jurada y el documento titulado "*Pagaré con Garantía de Prenda*" de 9 de diciembre de 1993, mediante el cual entregó a Hernández ambos pagarés en calidad de prenda. Apéndice de la Peticionaria, págs. 11-22. El TPI permitió la intervención solicitada mediante orden de 4 de octubre de 1999. Apéndice de los Recurridos, págs. 48-49.

Posteriormente, el juicio en su fondo se celebró el 1 de diciembre de 1999. Allí se presentó tanto prueba documental como testifical. ■ Luego de aquilatada dicha prueba, el TPI encontró probados los siguientes hechos:

*"1. El demandante Lucas Hernández es el tenedor de dos pagarés con garantía de prenda garantizados con una hipoteca sobre un inmueble localizado en la calle Fordham #905 en University Gardens en Río Piedras.*

*2. La propiedad que garantiza los pagarés pertenece a Hadassa Colberg Ramírez, codemandada y ex esposa de Víctor Santini, quien la adquirió mediante Sentencia de Divorcio en abril de 1985, de la Sociedad de Gananciales compuesta por ella y Víctor M. Santini.*

*3. Víctor Santini es ingeniero de profesión y allá para 1983 contrató la construcción de un edificio en la Calle Robles #253 en Río Piedras. Santini contrató con los hermanos Juan Bautista Figueroa e Iris Figueroa García.*

*4. Las partes otorgaron un contrato de construcción y como fianza "performance bond", Santini le entregó a Juan B. Figueroa un pagaré al portador de $15,000.00 garantizado con una segunda hipoteca sobre su residencia.*

*5. A esa fecha (1983), ya Santini y Colberg estaban separados. Colberg no tuvo conocimiento de la entrega a Figueroa del pagaré de $15,000 y, por tanto, tampoco dio su consentimiento a ello.*

*6. Para el año 1983, Iris Figueroa residía en Nueva York y el proceso de la construcción del edificio en Río Piedras estaba a cargo de su hermano Juan B. Figueroa quien residía en Puerto Rico.*

*7. Durante 1984, Santini recibió de Iris Figueroa la cantidad de $20,000.00 en calidad de préstamo para terminar el edificio, ya que Santini le informó a Figueroa que iba a comprar un granero y que necesitaba dinero en efectivo. Para garantizar el pago de $20,000.00, Santini le entregó a Iris Figueroa un pagaré al portador de $40,000.00 garantizado con una segunda hipoteca sobre su residencia.*

*8. Tampoco en esa ocasión, Hadassa Colberg dio su consentimiento ni tuvo conocimiento de la entrega del segundo pagaré.*

*9. Lucas Hernández adquirió los dos pagarés (de $15,000.00 y $40,000.00, respectivamente) de Iris Figueroa en carácter de prenda mediante un documento titulado Pagaré con Garantía de Prenda otorgado el 9 de diciembre de 1993, ante el notario Marcelino Ruiz Corujo.*

*10. Lucas Hernández, quien es prestamista, recibió en prenda los dos pagarés al portador en garantía de pago de un préstamo que hiciera a Iris Figueroa. El préstamo que Hernández hizo a Figueroa se hizo a fines de 1993 por la cantidad de $42,000.00.*

*11. Los pagarés habían sido otorgados allá para el 24 de febrero de 1978 por Colberg y Santini.*

*12. Los pagarés no fueron endosados a favor de Lucas Hernández."*

Apéndice de la Apelante, págs. 7-8.

Acto seguido, el TPI concluyó, como cuestión de derecho, que los créditos garantizados por hipoteca prescriben a los 20 años, por lo que la hipoteca del caso de epígrafe se había extinguido y, por tanto, la acción

estaba prescrita. Además, determinó que el demandante no tenía legitimación activa para ejercitar la acción, toda vez que como acreedor prendario, no es titular de un derecho real sobre los pagarés. Así, declaró no ha lugar la demanda. Dicha sentencia se notificó el 4 de mayo de 2000.

De dicha sentencia, Hernández y la interventora Figueroa apelaron ante el Tribunal de Circuito de Apelaciones, Circuito Regional I (TCA). ■ Mediante sentencia de 29 de junio de 2001, notificada el 17 de julio del mismo año, el TCA revocó la sentencia emitida por el TPI. Dicha determinación se fundamentó, entre otros, en el hecho de que existió una transferencia de derecho válida en virtud de la segunda cláusula del documento suscrito por Figueroa y Hernández, ■ mediante el cual este último se sustituiría en el lugar de Figueroa a los efectos de ejercer cualquier acción de cobro de los pagarés, incluyendo la vía judicial. Por ende, Figueroa sí tenía legitimación activa para instar la acción de epígrafe. Por otro lado, el TCA determinó que la alegada extinción de la hipoteca a tenor con el Artículo 1864 del Código Civil, 31 L.P.R.A. § 5294, ■ no ocurrió, toda vez que la acción se instó a los dieciséis años de otorgado el crédito hipotecario.

Además de lo resuelto en derecho, este tribunal, en su exposición de los hechos, expresó que: "*Santini nunca le pagó los $20,000.00 a Figueroa y tampoco cumplió con el contrato de construcción. En consecuencia, Figueroa se convirtió en dueña de los dos pagarés que le entregara Santini.*" Véase pág. 3 de la Sentencia del Tribunal de Circuito de Apelaciones, Apéndice de la Peticionaria, pág. 35.

Inconforme con dicha sentencia, Colberg instó recurso de *Certiorari* ante el Tribunal Supremo de Puerto Rico. Apéndice de la Peticionaria, págs. 243-260. Dicho tribunal, sin entrar en los méritos del auto, lo declaró no ha lugar mediante Resolución de 19 de octubre de 2001 por incumplimiento craso con el Reglamento. ■ Apéndice de los Recurridos, págs. 44-45.

De conformidad con lo anterior, el caso fue devuelto al TPI para la continuación de los procedimientos conforme a lo resuelto por el TCA. El caso fue asignado a la Hon. Olivette Sagebien Raffo, Juez, debido a que para ese momento la Hon. Elba Rodríguez Fuentes ya no ejercía funciones como juez.

Así, la vista en su fondo fue señalada para el 21 de junio de 2002. Sin embargo, quedó suspendida luego de que se acreditara la condición médica del codemandado Santini, cuya presencia resultaba fundamental para la dilucidación del caso. Por acuerdo de las partes, y luego de que resultaran infructuosos los intentos de transacción del caso, el mismo quedó reseñalado para vista en su fondo los días 25 y 26 de febrero de 2003. Sin embargo, la parte interventora y la parte demandante trajeron a la atención del TPI si debían darse como hechos probados las determinaciones de hechos contenidas en la sentencia del TCA. En vista de ello, el TPI concedió el término de 60 días a dichas partes para la presentación de memorandos de derecho a los efectos de determinar si debían darse como probados los hechos contenidos en la sentencia dictada por el TCA. A los codemandados le concedió 30 días para expresarse al respecto, luego de lo cual quedaría sometido el asunto para la consideración del Tribunal. Véase Minuta fechada el 25 de junio de 2002, Apéndice de los Recurridos, Anejo 10, págs. 63-65.

Tanto el demandante como la interventora presentaron su memorando el 18 de septiembre de 2002. Apéndice de la Peticionaria, págs. 261-280. Santini presentó su memorando, fechado el 21 de enero de 2003. De igual forma, Colberg presentó el suyo el 4 de febrero de 2003. Apéndice de la Peticionaria, págs. 315-322.

Luego de examinados éstos, el TPI emitió la resolución recurrida el 5 de febrero de 2003, notificada en autos al día siguiente, 6 de febrero. En la misma, el ilustrado foro de instancia adoptó la lista de controversias a ser dilucidadas según delimitadas en la Conferencia con Antelación al Juicio celebrada el 15 de diciembre de 1998 ante la Juez Rodríguez Fuentes y plasmadas en la minuta de igual fecha, a saber: (1) Si al momento en que se dan los pagarés en garantía por el esposo, se requería la comparecencia de la Sra. Colberg, (2) Si los pagarés fueron o no una garantía de tipo prendario, (3) Si la Sra. Iris Figueroa podía o no transferir dichos pagarés, (4) Si el Sr. Lucas Hernández puede ejecutar o no dichos pagarés sin haber ejecutado la prenda, (5) Como parte de

(2) y (3), hay que entrar a considerar si hubo o no cumplimiento con la obra de construcción.

En esencia, el TPI determinó que *"no tenemos otra opción que dar por probados los hechos que el Tribunal de Circuito de Apelaciones consignó en su Sentencia."* Fundamentó su decisión en el hecho de que el TCA revisó una transcripción de la vista en su fondo. Además expresó que luego de ello, dicho Tribunal procedió a determinar como hechos aquéllos que en su criterio, entendió probados. Ante tales circunstancias, el TPI estimó que procedía dar cumplimiento al mandato emitido por el TCA y, por lo tanto, disponer en los méritos el caso devuelto a tenor con los hechos probados por este Tribunal.

Precisó, además, que de haber incidido el TCA en cuanto a los hechos que estimó probados, debió la parte afectada por ello solicitar oportunamente revisión ante el Tribunal Supremo. Resaltó que *"[a]nte ese foro es que debió dilucidarse si lo resuelto por el Tribunal de Circuito de Apelaciones se ajustaba o no a la regla de conclusividad. (...) Esta determinación no nos compete."* Apéndice de la Peticionaria, págs. 328-329.

Inconforme, el 7 de marzo de 2003, Colberg recurrió oportunamente ante este Tribunal mediante recurso de *certiorari*, señalando la comisión del siguiente error:

*"ERRO EL HONORABLE TRIBUNAL DE INSTANCIA AL RESOLVER QUE BAJO LA DOCTRINA DE LA LEY DEL CASO NO TENIA OTRA ALTERNATIVA QUE ADOPTAR COMO HECHO PROBADO LA MENCION DEL HONORABLE TRIBUNAL APELATIVO A LOS EFECTOS DE QUE EL CONTRATISTA DE LA OBRA HABIA INCUMPLIDO SU CONTRATO DE CONSTRUCCION."*

El mismo día, Colberg presentó Moción en Auxilio de Jurisdicción. En la misma, expresó que el TPI emitió resolución de 5 de febrero de 2003 ordenando a las partes presentar en un término de 30 días un escrito sometiendo su caso amparado en los hechos probados, incluyendo el que se cuestiona en la petición de *certiorari*. En vista de ello, solicitó paralización de los procedimientos en el TPI mientras se resolviese en los méritos este recurso.

Analizada dicha moción, emitimos resolución el 10 de marzo de 2003 expidiendo el auto de *certiorari* solicitado. A su vez, concedimos 20 días a la parte recurrida para fijar su posición.

Conforme a lo ordenado, el 31 de marzo de 2003, Hernández y Figueroa comparecieron conjuntamente mediante Moción Solicitando Desestimación por Falta de Jurisdicción. En la misma, solicitaron la desestimación al amparo de la Regla 34(E) del Reglamento de este Tribunal, debido a que no se incluyeron en el Apéndice de la peticionaria los siguientes documentos: (1) Memorando de Derecho presentado por Hernández, (2) Memorando del codemandado Santini, (3) Moción adoptando Memorando del codemandado Víctor M. Santini presentada por Colberg, (4) Solicitud de Desestimación de Petición de *Certiorari* y Alegato en Oposición a Expedición del Recurso presentada por Hernández ante el Tribunal Supremo, (5) la Resolución de 19 de octubre de 2001 del Tribunal Supremo, (6) Orden de 24 de agosto de 1999 dictada por el TPI concediendo a las partes término para exponer su posición en torno a la solicitud de intervención de Figueroa, (7) Orden de 4 de octubre de 1999 que permitió la intervención solicitada por Figueroa, y (8) Moción sometiendo informe presentada el 29 de octubre de 1999 por Figueroa a la cual acompañó su parte del Informe sobre Conferencia Preliminar entre Abogados, y (9) Estipulación de Divorcio suscrita por Santini y Colberg. Concluyó que la omisión de los documentos arriba indicados amerita la desestimación del recurso por incumplimiento craso con nuestro Reglamento.

Por otro lado, los recurridos plantearon que el recurso de autos no se ha presentado de buena fe y es frívolo, habida cuenta que no existe una controversia sustancial, y el mismo fue interpuesto para demorar los procedimientos. En síntesis, alegaron que remitido un mandato por el tribunal apelativo, el tribunal de instancia debe limitarse a dar cumplimiento a lo ordenado, lo cual constituye la ley del caso entre las partes. Por ende, los

recurridos afirmaron que los hechos declarados probados por el tribunal apelativo, incluyendo el incumplimiento del contrato de construcción, deben ser concluyentes para las partes. Por lo tanto, arguyeron no procede la relitigación de controversias que alegadamente intenta la peticionaria.

En cuanto a la ejecución de hipoteca, el recurrido Hernández argumentó que, si bien la garantía hipotecaria de los pagarés no es efectiva debido a que la hipoteca quedó cancelada en el Registro de la Propiedad, tanto Santini y Colberg incurrieron en actos en fraude de acreedores al procurar su cancelación ante el Registro de la Propiedad estando pendiente la acción de autos, instada antes del vencimiento de la hipoteca. Concluyó que tanto Santini y Colberg, como deudores hipotecarios, no notificaron a los acreedores luego de su divorcio, por lo que responden por las deudas contraídas durante la vigencia de la sociedad legal de gananciales Véase pág. 22 de la Moción de Desestimación.

Así las cosas, el 29 de abril de 2003, la peticionaria presentó Moción en Oposición a Petición de Desestimación por Falta de Jurisdicción. Afirmó, en esencia, que su Apéndice, el cual contiene 23 documentos y 330 páginas, incluyendo la transcripción de la vista en sus méritos, contiene todos los documentos necesarios para la adjudicación de la controversia presentada, la cual nos invita a determinar si una vez devuelto un caso, el TPI viene obligado a *"dar un hecho como probado (incumplimiento de un contrato de construcción) porque el tribunal apelativo, cuando tuvo ante sí la controversia sobre legitimación activa, se expresó sobre el incumplimiento del contrato de construcción, a pesar de que esa controversia no estaba ante su consideración y, más aún, el tribunal de instancia no había aquilatado la prueba conflictiva al respecto."* Pág. 3 de la Moción en Oposición.

Trabada así la controversia, pasamos a resolver, no sin antes atender los planteamientos jurisdiccionales de la parte recurrida.

## II

Es norma reiterada que los abogados están obligados a cumplir fielmente el trámite prescrito en nuestro Reglamento para el perfeccionamiento de los recursos. *Arriaga v. FSE,* 145 D.P.R. 122, 130 (1998). El Reglamento de este tribunal establece, como requisito de todo recurso, la presentación de un Apéndice que contenga copias literales de los documentos esenciales para sustentar el recurso. Respecto a los *certiorari,* la Regla 34E(1) (a) (1) de nuestro Reglamento dispone en su parte pertinente que en casos civiles deberá incluirse una copia literal de *"... la demanda principal, la de coparte o de tercero(a) y reconvención, con sus respectivas contestaciones; ..."*. También establece en su inciso (d) que se unirá *"... toda moción o escrito de cualquiera de las partes que forme parte del expediente original en el Tribunal de Primera Instancia, en las cuales se discuta expresamente cualquier asunto planteado en la solicitud de certiorari, que sea relevante a ésta"*. 4 L.P.R.A. Ap. XXII-A, R. 34.

En *Codesi v. Municipio de Canóvanas,* Opinión de 24 de marzo de 2000, **2000 J.T.S. 61**, 150 D.P.R. ____ (2000), el Tribunal Supremo resolvió que la omisión de incluir los anteriores documentos acarrea la desestimación del recurso.

No empece a lo anterior, recientemente en *Andrés Román Velázquez v. Andrés Román Hernández,* **2002 J.T.S. 132**, 157 D.P.R. ____ (2002), el Tribunal Supremo resolvió que: *"[c]omo regla general, el mecanismo procesal de la desestimación, como sanción, debe utilizarse como último recurso. Por consiguiente, cuando el Tribunal [de Circuito de Apelaciones] utiliza dicho mecanismo procesal en casos de incumplimiento con su Reglamento, debe cerciorarse primero que el incumplimiento haya provocado un impedimento real y meritorio para que el Tribunal pueda atender el caso en los méritos."*

Aplicado el principio arriba expuesto al caso ante nos, concluimos que las omisiones de la peticionaria no son de tal naturaleza que nos impida realizar nuestra función revisora. Concluimos que la falta de los mismos no

obstaculiza la resolución del recurso ante nuestra consideración al punto de no poder emitir una resolución fundamentada. Adviértase que la función de este Tribunal es revisar estrictamente la Resolución del TPI de 5 de febrero de 2003. Ciertamente, no resulta esencial e indispensable para este Tribunal examinar las órdenes y memorandos de derecho omitidos. Por lo tanto, declaramos no ha lugar la desestimación del recurso según solicitada por los recurridos.

### III

Procede discutir el derecho aplicable a la controversia de autos recalcando el alcance y definición de los siguientes conceptos, según discutidos por nuestro más alto foro: la doctrina de la ley del caso, la regla de la conclusividad o deferencia como estándar revisorio de los foros apelativos y, por último, la definición de *obiter dictum.*

La doctrina de la ley del caso establece que las determinaciones hechas por un tribunal apelativo en todas aquellas cuestiones consideradas y decididas, generalmente obligan tanto al tribunal de instancia como al que las dictó, si el caso es devuelto para su consideración. *Secretario del Trabajo v. Tribunal Superior*, 95 D.P.R. 136, 140 (1967). En *Management Administration Services Corp. v. E.L.A.,* **2000 J.T.S. 189**, el Tribunal Supremo recalcó que: *"de ordinario, los planteamientos que han sido objeto de adjudicación por el foro de instancia y/o por este Tribunal no pueden reexaminarse. Esos derechos y responsabilidades gozan de las características de finalidad y firmeza." Id,* pág. 439.

Con arreglo a dicha doctrina, el TPI deberá acatar el mandato emitido por el tribunal apelativo. Sin embargo, se ha establecido que dicha norma *"es una al servicio de la justicia, no la injusticia; no es férrea, ni de aplicación absoluta. Por el contrario, es descartable si conduce a resultados manifiestamente injustos"* *Estado v. Ocean Park Dev. Corp.,* 79 D.P.R. 158,174 (1956). Véase, además, *Management Administration Services Corp. v. E.L.A., supra,* págs. 439-440, *Noriega v. Gobernador,* 130 D.P.R. 919, 931 (1992). Cuando el tribunal entiende que la aplicación de la ley del caso es errónea y, además, causa una grave injusticia, el Tribunal puede resolver de forma distinta a fin de hacerlo en forma justa. *Don Quixote Hotel v. Tribunal Superior,* 100 D.P.R. 19, 29 (1971).

De este modo, en ciertas situaciones excepcionales, se permite al foro apelativo concluir de forma distinta a una previa decisión. La doctrina de la ley del caso se puede obviar en casos en que un sólo panel o un juez del mismo reconsidera y cambia su propia decisión. También se ha determinado que ley del caso puede resultar igualmente inaplicable entre paneles distintos. Dicho de otro modo, un segundo panel apelativo está facultado para cambiar una decisión errónea de un primer panel si se configuran los requisitos de la excepción de la ley del caso. Véase Opinión de Conformidad del Juez Asociado Hon. Federico Hernández Denton en *Banco Bilbao Vizcaya de Puerto Rico v. Municipio de Vega Baja,* **2001 J.T.S. 63**, págs. 1187-1188.

Del mismo modo, y analizada la doctrina en el ámbito del TPI, nuestro Tribunal Supremo ha resuelto que un juez de primera instancia puede cambiar la decisión errónea de un primer juez en el mismo caso. *Torres Cruz v. Municipio de San Juan*, 103 D.P.R. 217 (1975). Nótese, además, el lenguaje amplio que otorga la Regla 64 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 64. Dicha regla reza: *"Si por razón de muerte, enfermedad, o por cualquier otra razón, un juez no pudiese continuar entendiendo en un asunto, otro juez podrá actuar en su lugar; pero si éste se convenciere de que no puede desempeñar dichos deberes sin la celebración de un nuevo juicio sobre todos o parte de los hechos o sin oír nuevamente a algún testigo,* **podrá tomar las medidas que fueren necesarias para la resolver el pleito**.*"* (Enfasis nuestro).

De otro lado, la aplicación del concepto de *obiter dictum* ▮ se da en situaciones en las que un tribunal emite expresiones innecesarias en un caso o una controversia ante sí, acerca de interrogantes jurídicas que no le han sido estrictamente planteadas. Dichas expresiones no se encuentran directamente relacionadas con la controversia ante su consideración y resultan, por lo general, excesivas e innecesarias en relación con el fallo.

Por ende, las mismas no sientan precedente jurídico alguno y se han de tener por no puestas. *Ortiz v. F.E.I.*, **2001 J.T.S. 137**, 175-176; 155 D.P.R. ____ (2001); *Martínez v. Registrador*, 54 D.P.R. 7 (1938). Véase además, *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Ello siendo así, las expresiones que constituyen *obiter dictum* meramente representan un elemento extrínseco al razonamiento o la línea de pensamiento requerido para la resolución de un caso. Dichos comentarios no forman parte del *ratio decidendi* y, por ende, no tienen carácter autoritativo. Se trata pues, de declaraciones hechas sobre ciertos extremos que el tribunal no viene llamado a adjudicar. *In re: McDonald*, 205 F. 3d 606, 612-613 (3d Cir. 2000).

En el ámbito estatal, cuyos pronunciamientos examinamos por su valor estrictamente persuasivo, se ha resuelto que cuando un caso no se resuelve en sus méritos, cualquier otra discusión o comentario atinente a los méritos del caso constituye *obiter dictum*. *Puryear v. State,* 810 So 2d 901, 905 (Fla, 2002). Además, en *Clemmons v. Office of Child Support Enforcement,* 47 S.W.3d 227 (Ark, 2001), se discutió ampliamente la diferencia entre la ley del caso y el *obiter dictum: "While a decision of the court will not be disturbed because it is law of the case under res judicata, the court is not bound by a conclusion stated as obiter dictum, even if couched in terms that infer the court reached a conclusion on a matter. This is so because obiter dictum is mere comment and not a decision of the court, and therefore not binding as the law of the case under res judicata."*

Finalmente, nos resta discutir la regla de la deferencia o conclusividad, la cual responde al principio cardinal de que los foros apelativos no intervendrán con la apreciación de la prueba efectuada según formulada por el juzgador de los hechos, salvo en circunstancias extraordinarias de error manifiesto, prejuicio, parcialidad o pasión. *Rodríguez Báez v. Nationwide Insurance Company*, **2002 J.T.S. 61**, pág. 1010; *Sanabria v. Sucesión González*, 82 D.P.R. 885 (1961). Fundamento de ello es el hecho de que el juez sentenciador, ante quien deponen los testigos, es quien tiene la oportunidad de verlos, observar sus expresiones faciales, manerismos, dudas, titubeos y apariencia en general (*"demeanor"*). Ello siendo así, es el juez de los hechos quien forma gradualmente en su conciencia la convicción en cuanto a quien, en última instancia, le merece credibilidad. *Argüello López v. Argüello García*, **2001 J.T.S. 127**, pág. 94.

En *Sanabria v. Sucesión González, supra,* págs. 995-6, se resolvió que la regla de la conclusividad *"quedó restringida exclusivamente, a aquella parte de la evidencia oral de la cual se desprenda un conflicto irreconciliable, aunque racionalmente probable, entre dos versiones contradictorias sobre un hecho esencial, que no pueda ser esclarecido por ninguna otra parte de la evidencia, o que para su esclarecimiento, necesite de aquellos elementos expresionales de la credibilidad que brinda a la convicción del juzgador, la observación del testimonio mientras presta declaración. (Citas omitidas). Claro es, que en aquellos casos donde la supremacía de la evidencia oral se manifiesta, y el conflicto entre los testimonios irreconciliables ha sido resuelto por el juez, aceptando la versión de una de las partes, la regla de la conclusividad se aplica sin reserva alguna, a menos que no resulte contraria al orden natural de las cosas o al orden racional de la inteligencia humana."* *Id.*

Sin embargo, la regla de la conclusividad no se extiende a la evaluación de prueba documental, pues los tribunales apelativos están en igual situación que la sala sentenciadora para aquilatar dicha evidencia, por la razón de que no existen los elementos expresionales que hacen más o menos creíbles los testimonios orales. *Díaz García v. Aponte Aponte*, 125 D.P.R. 1, 13-14 (1989).

Por último, debemos puntualizar que la relación de los hechos contenidos en una sentencia no puede tener el efecto de adjudicar los derechos de las partes. Es únicamente la porción o la parte dispositiva de la sentencia la que controla, o va por encima, de las meras relaciones de hecho. Ello, porque las determinaciones de hechos y conclusiones de derecho constituyen, de forma separada e independiente, los fundamentos en que se apoya el juez para emitir la sentencia. *Cárdenas Maxán v. Rodríguez*, 119 D.P.R. 642, 655-656 (1987). Allí, el Tribunal

Supremo citó a *City and Bor. Of Juenau v. Thibodeau,* 595 P. 2d. 626, 628 (1979), a los efectos de que: *"The recital of the facts in a decree is usual and proper, but the rights of the parties are adjudged not by the relation of facts, but solely by the decretal portion of the decree. It is this and this only that becomes the final judgmement [sic] of the Court from which an appeal will lie." Id.* Pág 657.

## IV

Esbozados los principios de derecho aplicables, procede analizar el error planteado por la peticionaria, a saber: si incidió el TPI al adoptar como hechos probados las expresiones del foro apelativo en su sentencia de 29 de junio de 2001 en cuanto al incumplimiento del préstamo y el contrato de obra por Santini. Las expresiones en controversia son las siguientes:

*"Santini nunca le pagó los $20,000 a Figueroa y tampoco cumplió con el contrato de construcción. En consecuencia, Figueroa se convirtió en dueña de los dos pagarés que le entregara Santini."* Pág. 3 de la Sentencia.

Más adelante, el TCA concluyó:

*"Siendo partes en el pleito tanto el acreedor prendario (Hernández) como el acreedor hipotecario (Figueroa), no existía impedimento alguno para que se procediera a la ejecución de la hipoteca a favor de éstos."*

Surge claramente del expediente ante nos que las expresiones arriba citadas no fueron objeto de determinación por el TPI en su sentencia de 20 de marzo de 2000. Ello, debido a que su sentencia dispuso de la acción sin entrar en los méritos de la misma. En particular, el TPI invocó la falta de legitimación del demandante y la prescripción de la acción hipotecaria, ambos extremos eventualmente declarados erróneos por el TCA.

El TCA emitió su sentencia revocatoria a los efectos de ejercer su función revisora en cuanto a los únicos dos extremos arriba indicados. Por lo tanto, es forzoso concluir que la esencia del mandato de este foro apelativo sólo puede entenderse como un rechazo a la falta de legitimación del demandante y a los planteamientos de prescripción. Ello fue fundamentalmente lo que motivó la parte dispositiva de la sentencia, es decir, la devolución del caso al TPI para la continuación de los procedimientos. Ello nada tiene que ver con la determinación en los méritos de si hubo o no cumplimiento por parte del codemandado Santini.

Cuando la función revisora del TCA versa fundamentalmente sobre la errónea aplicación de planteamientos jurisdiccionales en instancia, como la falta de legitimación activa, y la prescripción, no deben entenderse otros pronunciamientos de la sentencia apelativa relativos a los méritos del caso, como parte integral del mandato de la misma. Máxime, cuando dichos asuntos **nunca** llegaron a ser adjudicados por el tribunal sentenciador. Ello siendo así, procede que determinemos si la doctrina de la ley del caso debe ser aplicada a las aludidas expresiones hechas por el TCA. Concluimos en la negativa. Veamos.

La ley del caso, según concebida por nuestro más alto foro, obliga a los tribunales respecto a todas aquellas determinaciones de un tribunal **que hayan sido consideradas y decididas**. Ello responde al principio de que toda adjudicación debe tener un fin. *Secretario del Trabajo v. Tribunal Superior, supra,* pág. 141.

En el caso de autos, resulta evidente que el tribunal *a quo* no hizo determinación alguna en cuanto al incumplimiento del codemandante Santini, puesto que estimó innecesario entrar en los méritos del caso. Ello siendo así, no cabe discutir la ley del caso a los efectos de poner fin a una adjudicación que nunca existió o tuvo lugar en el TPI.

La apelación en cuanto a la desestimación del caso fue correctamente resuelta por este tribunal. No obstante, su sentencia incluyó unas expresiones concluyendo, por primera vez en el trámite procesal del caso, que hubo incumplimiento por parte del codemandado Santini. Dichas expresiones no pueden formar parte del mandato emitido por el TCA por la sencilla razón de que este último sólo revisó la desestimación del caso, no resuelto aún en sus méritos. El TCA, por tanto, no tuvo ante sí determinación expresa alguna atinente a los méritos del caso para revisar. ▇ Por lo tanto, dichas expresiones no obligan al tribunal inferior con arreglo a la doctrina de la ley del caso.

Concluimos que la aplicación de la ley del caso conllevaría una grave injusticia contra todas las partes que ofrecieron su testimonio en la vista oral, el cual no se llegó a aquilatar propiamente. Del mismo modo, entendemos que favorecer la aplicación de la ley del caso, ciertamente pugna con el rol esencial de un tribunal sentenciador: éste no puede abdicar su tarea primordial de procurar que los casos ante sí se ventilen en sus méritos.

Nos resta, sin embargo, analizar la regla de la conclusividad o deferencia al caso de autos. En *Sanabria v. Sucesión González, supra,* se dijo que la deferencia del tribunal apelativo se aplica especialmente en casos en que el juez ha resuelto aceptando la versión de una de las partes en casos en que la prueba oral sobre un hecho esencial es totalmente contradictoria y sólo puede ser esclarecida por la observación del juzgador de los elementos expresionales o el *"demeanor"* de los testigos.

En el caso de autos, existe una evidente contradicción entre los testimonios. Por un lado, la testigo Iris Figueroa testificó lo siguiente:

*"P: En ese documento número 3, exhibit número 3, se le habla de un pagaré que usted recibe en garantía. Le pregunto ¿qué relación tiene ese pagaré con el pagaré que se ha sometido en evidencia, que está aquí en este Tribunal, es distinto, es el mismo, es parecido?*

*R: No, no, no, no, en otras palabras, esto fue lo que Santini le dio a mi hermano de garantía para terminar el edificio.*

*P: ¿Y ese pagaré?*

*R: Y este pagaré, mi hermano me lo envía a mí porque yo en ese entonces vivía en Nueva York.*

*P: Muy bien. Y ese pagaré fue el mismo...o ¿qué relación tiene ese pagaré con el que usted negoció con el señor Lucas Hernández?*

*R: Es el mismo, ahí no existe nada más que uno.*

*P: Muy bien.*

*R: De $15,000, uno.*

*P: Ese es uno de $15,000. Posteriormente ¿cuánto dinero llegó usted a pagarle al señor Santini, si le pagó algo, para la construcción de ese edificio?*

*R: Le pagué más de ciento diez mil, le pagué ciento veintisiete mil y pico.*

***P: Ciento veintisiete mil y pico. Le pregunto ¿si el señor Santini le terminó a usted la construcción del edificio?***

*R: El no me terminó la construcción del edificio."* (Enfasis nuestro) Apéndice de la Peticionaria, pág. 138.

Más adelante, sin embargo, el Sr. Santini testificó lo siguiente:

*"P: ¿Que evento ocurrió en esa época cuando usted firmó este contrato el 23 de julio del ´84?*

*R: Cuando uno hace la reunión de liquidación de obra es porque está terminada.*

*P: ¿Estaba terminada?*

*R: La obra estaba terminada.*

*P: Le pregunto ¿si usted le debe algún dinero a la señora Iris Figueroa al momento de hoy?*

*R: Que yo tenga conocimiento, no."* (Enfasis nuestro). Apéndice de la peticionaria, pág. 205.

Sin embargo, notamos que si bien la jueza de instancia escuchó dicho testimonio, nunca llegó a adjudicar cuál de las partes le merecía credibilidad. Ante la falta de determinación en cuanto a los testimonios irreconciliables, el TCA no podía estar en igual situación al evaluar dicha evidencia testimonial ante el TPI, toda vez que la credibilidad que sólo puede derivarse del *"demeanor"* de los testigos con aseveraciones contradictorias no puede apreciarse de la lectura abstraída de los autos. Por lo tanto, la doctrina de la conclusividad no puede extenderse a la evaluación de dicha prueba por el tribunal apelativo.

En vista de la inaplicabilidad de la ley del caso y la regla de la conclusividad o deferencia al caso de autos, resulta necesario concluir que las aseveraciones o expresiones del TCA relacionadas a los méritos del caso de autos no pueden ser interpretadas como parte integral del fallo, por lo que su mención por el TCA no es sino otra cosa que *obiter dictum*. Ello siendo así, los mismos no pueden interpretarse como hechos probados por el tribunal de instancia.

## V

Por los fundamentos antes expuestos, se revoca la resolución recurrida y se devuelve el caso para la celebración de una vista en los méritos a los fines de determinar si hubo o no incumplimiento por parte del codemandado Santini y cualquiera otra controversia de hechos, todo ello, sin perjuicio de las disposiciones de la Regla 64 de las de Procedimiento Civil.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2003 DTA 116

1. Dicha resolución fue emitida por el panel compuesto por la Hon. Juez Fiol Matta en sustitución de la Juez Rodríguez de Oronoz, la Juez Peñagarícano Soler y la Juez Bajandas Vélez.

2. Según se aduce en la contestación de la demanda, Colberg obtuvo el divorcio de Santini el 1 de noviembre de 1985 en el Tribunal Superior de San Juan, caso RF 85-1443(701). Dicha sentencia contenía una estipulación, mediante la cual Santini se hizo responsable por las deudas contraídas por la Sociedad Legal de Gananciales, excepto la deuda referente a la casa objeto de la ejecución de hipoteca de epígrafe. Véase Estipulación de Divorcio, Apéndice de la parte recurrida, págs. 59-60.

**3.** Véase Cláusula Segunda de *"Pagaré con Garantía de Prenda"*, Apéndice de la Peticionaria, pág. 15.

**4.** Véase Pág. 2 de la Sentencia del TPI suscrita por la Hon. Elba Rosa Rodríguez. Apéndice de la Apelante, pág. 6. Además, véase sentencia del Tribunal de Circuito de Apelaciones, págs. 2-4. Apéndice de la Peticionaria, págs. 33-44.

**5.** El Apéndice del recurso de autos contiene una transcripción de la vista en su fondo, págs. 65-227.

**6.** El panel que resolvió dicha apelación estaba compuesto por su presidenta, la Juez Fiol Matta, la Juez Rodríguez de Oronoz y el Juez González Román.

**7.** *"Pagaré con Garantía de Prenda"*, *infra,* nota 3.

**8.** Dicho artículo dispone que la acción hipotecaria prescribe a los veinte años.

**9.** En dicha resolución se hizo constar la concurrencia de la Juez Asociada, Hon. Miriam Naveira, por entender que el recurso carecía de méritos.

**10.** El vocablo proveniente del latín y significa literalmente *"dicho de paso"*. Véase Black's Law Dictionary, Minnesota: West, 1990, pág. 1072.

**11.** Lo único que surge de la transcripción contenida en el expediente, es que la jueza sentenciadora, Hon. Elba Rosa Rodríguez Fuentes, hizo ciertas expresiones relativas a la impugnación del testimonio del codemandado Santini. En específico, ante una objeción a dicha línea de preguntas, la Juez se limitó a decir: *"Me parece que es una impugnación clara."* Véase Apéndice de la Peticionaria, págs. 147-148. Ello, sin embargo, no puede tomarse como una adjudicación de credibilidad en corte abierta, mucho menos cuando no se consignó ello expresamente en la sentencia.